Ms. Josefina M. Tamayo General Counsel Department of Children and Families 1317 Winewood Boulevard Tallahassee, Florida 32399-0700
Dear Ms. Tamayo:
On behalf of the Department of Children and Families (department), you ask substantially the following question:
What portion of the department's incident reports which contain information regarding child abuse, abandonment, or neglect are confidential under section 39.202(1), Florida Statutes?
In sum:
Records relating to the licensure of foster homes, or assessing how the department is carrying out its duties, including references to incidents of abuse, abandonment, or neglect, contained in such records, do not fall within the parameters of section 39.202, Florida Statutes. An examination of the operating procedures relating to incident reports indicates such incident reports are in the nature of quality assurance reports that do not substitute for the reporting and protective investigation of child abuse, abandonment, or neglect. Therefore, such incident reports would not be confidential under section 39.202(1), Florida Statutes. To the extent that such incident reports reference an occurrence of abuse, abandonment, or neglect, identifying information that reveals the identity of the victim contained in the reference should be redacted.
In considering any issue of access to government records, it must be recognized that in Florida reports generated by a public agency are public records subject to disclosure, unless specifically made confidential or exempt by the Legislature.[1] Any exemptions to the Florida Public Records Law are to be narrowly construed.[2]
Where a public record contains information that is exempt or confidential, that portion of the record which falls within the exemption may be redacted, while the remainder of the record must be produced for examination.[3]
Part II of Chapter 39, Florida Statutes, relates to the reporting of child abuse. When the department receives a report of child abuse, abandonment, or neglect, it is responsible for initiating a protective investigation.[4] Under such circumstances, section39.202(1), Florida Statutes, provides for the confidentiality of abuse, abandonment, or neglect records by stating:
"In order to protect the rights of the child and the child's parents or other persons responsible for the child's welfare, all records held by the department concerning reports of child abandonment, abuse, or neglect, including reports made to the central abuse hotline and all records generated as a result of such reports, shall be confidential and exempt from the provisions of s. 119.07(1) and shall not be disclosed except as specifically authorized by this chapter."[5]
In considering similar exemptions, this office has considered the purpose for which a record was created in light of the various functions performed by the department.[6] For example, in an informal opinion to the former Department of Health and Rehabilitative Services, this office considered whether the exemption afforded for all records concerning reports of abuse, neglect, or exploitation of an aged person or disabled adult applied to an inspector general's investigative report to determine program compliance.[7] A complaint had been received involving the death of three elderly persons in which abuse was suspected. The department conducted a protective services investigation; in addition, a separate investigation was instituted by the department inspector general which resulted in the report in question.
The purpose of the investigation and resulting report by the inspector general was to determine whether procedures had been properly followed by department personnel and the effectiveness of such procedures.[8] In contrast, however, the purpose of the exemption afforded for abuse, neglect, or exploitation records was to protect the aged person or disabled adult. Thus, this office concluded that the exemption was not applicable.
Similarly, in Bolyes v. Mid-Florida Television Corporation,[9] the court considered the applicability of the confidentiality provisions afforded child abuse investigations to a summary report created by the Department of Health and Rehabilitative Services. The court held that the summary report investigating the actions of the department was not an investigation into a child's death or to secure other children's safety, but was a licensing investigation. Thus, the confidentiality provisions afforded by statute for records resulting from child abuse investigations did not apply.
You state that incident reports are frequently used by the department to report and compile information about a variety of incidents including client death, physical abuse, neglect or exploitation, suicide attempts, thefts, and vandalism. Some reports may include information regarding child abuse, abandonment, or neglect, and may also contain information about the identity of the child victim and foster parents as well as the incident itself. There is no definition of the term "incident report" in the statutes or rules of the Department of Children and Families.
This office, however, has reviewed a copy of the department's District 10 operating procedure relating to incident reports.[10]
The review indicates that incident reports are in the nature of a quality assurance report. The title to the operating procedure refers to utilization of the incident reporting unit and quality improvement critical review incident team.[11] The procedure specifically states that incident reports "do not replace the abuse, neglect, and exploitation reporting requirements system set forth in Florida Statutes."[12] Rather, incident records are separate and, as provided in the operating procedure, do not relieve the department's counselor or contractual service provider from maintaining a full and complete record of incidents in the client case file and in the client resources record.[13]
If during the course of performing its quality assurance or licensure functions the department becomes aware of allegations of abuse, abandonment, or neglect, a separate and distinct report regarding such allegations should be developed in accordance with sections 39.201 and 39.301, Florida Statutes. While licensure or quality assurance reports may refer to an incident of abuse, abandonment, or neglect, such reference does not make the record, or the reference, protected information pursuant to section39.202, Florida Statutes, although identifying information that reveals the identity of the victim should be redacted.[14]
Accordingly, I am of the opinion that records relating to the licensure of foster homes, or assessing how the department is carrying out its duties, including references to incidents of abuse, abandonment, or neglect contained in such records, do not fall within the parameters of section 39.202, Florida Statutes. An examination of the operating procedures relating to incident reports indicates such incident reports are in the nature of quality assurance reports that do not substitute for the reporting and protective investigation of child abuse, abandonment, or neglect. Therefore, such reports would not be confidential under section 39.202(1), Florida Statutes. To the extent that such reports reference an occurrence of abuse, abandonment, or neglect, identifying information that reveals the identity of the victim contained in the reference should be redacted.[15]
Sincerely,
Robert. A. Butterworth Attorney General
RAB/tall
[1] See generally, Wait v. Florida Power Light Company,372 So.2d 420 (Fla. 1979).
[2] See, Krischer v. D'Amato, 674 So.2d 909, 911 (Fla. 4th DCA 1996); Seminole County v. Wood, 512 So.2d 1000, 1002 (Fla. 5th DCA 1987), rev. den., 520 So.2d 586 (Fla. 1988).
[3] See, e.g., Ocala Star Banner Corp. v. McGhee,643 So.2d 1196 (Fla. 5th DCA 1994).
[4] See, ss. 39.201 and 39.301, Fla. Stat.
[5] See, s. 39.01(2), Fla. Stat., defining "Abuse" as "any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired." Corporal discipline of a child by a parent or legal custodian for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child. And see, s. 39.01(1) and (45), Fla. Stat., respectively, defining abandonment and neglect.
[6] The Department of Children and Families has several roles. One is to protect the interests and safety of children entrusted to its care. See, e.g., s. 39.001, Fla. Stat. The department is also charged with the regulation, supervision, and licensure of foster homes. See, e.g., s. 409.175, Fla. Stat. A third concern of the department is its ongoing responsibility to determine whether it is properly carrying out the duties and responsibilities imposed upon it by law and to assess the quality of its performance. See, e.g., ss. 20.055 and 20.19(1)(b), Fla. Stat.
[7] Informal Op. to John S. Slye, dated August 3, 1993.
[8] Id.
[9] 431 So.2d 627, 637 (Fla. 5th DCA 1983), approved,467 So.2d 282 (Fla. 1985).
[10] See, District 10's Operating Procedure 10-1-04, dated March 8, 2001, entitled "Utilization of the Incident Reporting Unit and Quality Improvement Critical Review Incident Team" (DOP). While your letter refers to "critical incident reports," the operating procedure refers to both "significant incident reports" and "critical incident reports." Some of the types of incidents referenced in your letter would appear to qualify as significant incidents while others would qualify as critical incidents. Among those listed as critical incidents are tornados, death of child, suicide attempts, serious illness and sexual battery. Also included, however, is media coverage. The department may wish to review and revise the criteria defining a critical incident.
[11] See, DOP, supra.
[12] See, DOP 10-1-04(2)a.
[13] See, DOP 10-1-04(5)i.
[14] An examination of the statutes indicates an intent by the Legislature that identifying information regarding the identity of child abuse victims be confidential. See, e.g., s. 119.07(3)(f), Fla. Stat.
This office would suggest that if, for example, a department employee while conducting an inspection of a foster home for licensure purposes becomes aware of circumstances indicating that abuse, abandonment, or neglect of a child has occurred or is occurring, the employee should immediately contact the abuse hotline to initiate a protective investigation. In preparing the report of the employee's inspection, the licensure or incident report may reference that a report has been made to the hotline and indicate the number or other identifying characteristic assigned to the protective investigation.
[15] As previously discussed, the department is under a responsibility, upon receipt of a report of child abuse, abandonment or neglect to instigate a protective investigation. Previously filed licensure reports containing information which did not result in such investigation may not subsequently qualify as a record of child abuse, abandonment, or neglect within the meaning of s. 39.202, Fla. Stat.